IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL CASE NO. 5:18-CV-00130-MR

| | |
|---|---|
| RONALD MCCLARY, )<br>)<br>      Plaintiff, )<br>)<br>vs. )<br>)<br>ANNETTE DOWNEY, )<br>)<br>      Defendant. )<br>_____ ) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** comes before the Court on Defendant's Motion for Summary Judgment [Doc. 38].

## I.    PROCEDURAL BACKGROUND

On August 15, 2018, the Plaintiff Ronald McClary ("Plaintiff"), proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983 against Defendant Annette Downey, identified as a trust fund officer at Alexander Correctional Institution ("Alexander"), for the violation of his civil rights while incarcerated at Alexander in Taylorsville, North Carolina.[1] [Doc. 1]. On August 28, 2018, Plaintiff filed an Amended Complaint against Defendant Downey, in her individual and official capacities, asserting essentially the

---

[1] Plaintiff is now housed at Tabor Correctional Facility in Tabor City, North Carolina.

same claim as alleged in his original Complaint. [Doc. 4]. Namely, Plaintiff alleges that, on August 5, 2018, Defendant Downey declined Plaintiff's request for an inmate trust fund account statement for Plaintiff's use in filing an action in the North Carolina Industrial Commission. [Id. at 4-6]. Plaintiff claims that this act constituted a violation of his constitutional right of access to the courts. [Id. at 3]. In his Amended Complaint, however, Plaintiff omits his allegations that he exhausted his administrative remedies.[2] [See id. at 7-9]. For his injury, Plaintiff claims he was "unable to file [a] state tort claim." [Id. at 5]. For relief, Plaintiff seeks $10,000.00. [Id.].

On February 6, 2019, the Court reviewed Plaintiff's Amended Complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A and allowed Plaintiff's claim against Defendant Downey to proceed. [Doc. 7]. Defendant filed an Answer to Plaintiff's Amended Complaint. [Doc. 15]. On June 18, 2020, Defendant moved for summary judgment. [Doc. 38]. Defendant argues that summary judgment should be granted because Plaintiff failed to exhaust his administrative remedies, because she has sovereign immunity and qualified

---

[2] In his original Complaint, which was superseded on the filing of the Amended Complaint, Plaintiff alleged that he filed a grievance on July 15, 2018, but that his "grievances are being ripped up." [Doc. 1 at 2]. He also admits, however, that he did not "appeal any adverse decision to the highest level possible in the administrative procedure." [Id.]. To the extent Plaintiff did, in fact, file a grievance on July 15, 2018, it appears unrelated to the subject incident, which Plaintiff alleges to have occurred on August 5, 2018.

2

immunity against Plaintiff's claim, and because the record shows that Defendant did not deny Plaintiff access to the courts.

In support of her summary judgment motion, Defendant submitted a memorandum; the Declaration of Kimberly Grande, including copies of grievances submitted by Plaintiff during the relevant time frame; a Declaration of Counsel, including copies of certain records from proceedings brought by Plaintiff in the N.C. Industrial Commission, and a copy of an Order issued by this Court in McClary v. Searles, Case No. 3:15-cv-00077-FDW, dismissing Plaintiff's claim therein for failure to exhaust administrative remedies. [Docs. 39, 40, 40-1 to 40-8].

Thereafter, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and of the manner in which evidence could be submitted to the Court. [Doc. 41]. Plaintiff was specifically advised that he "may not rely upon mere allegations or denials of allegations in his pleadings to defeat a summary judgment motion." [Id. at 2]. Rather, he was instructed that he must support his assertion that a fact is genuinely disputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of

3

the motion only), admissions, interrogatory answers, or other materials." [Id. (citing Fed. R. Civ. P. 56(c)(1)(a))]. The Court further advised that:

> An affidavit is a written statement under oath; that is, a statement prepared in writing and sworn before a notary public. An unsworn statement, made and signed under the penalty of perjury, may also be submitted. Affidavits or statements must be presented by Plaintiff to this Court no later than fourteen (14) days from the date of this Order and must be filed in duplicate.

[Id. at 3-4 (citing Fed. R. Civ. P. 56(c)(4))].

Plaintiff timely filed a response to Defendant's summary judgment motion. [Docs. 42, 42-1]. Plaintiff's response included seven handwritten pages of unsworn assertions, primarily addressing exhaustion of administrative remedies and Plaintiff defending his record of prolific filing of suits in federal court and the North Carolina Industrial Commission; Plaintiff's one-page "memorandum;" five Inmate Request Forms submitted by Plaintiff to obtain his six-month prison trust fund account statement that are dated between May 13, 2018 and August 9, 2018; excerpts from various responses by Defendant to Plaintiff's discovery requests; and Plaintiff's one-page Affidavit. [Id.].

This matter is now ripe for adjudication.

4

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to

5

"depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record. See id.; Fed. R. Civ. P. 56(c)(1)(a). Courts "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt. Inc. v. J.D. Assoc.'s, LLP, 213 F.3d 174, 180 (4th Cir. 2000). The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. FACTUAL BACKGROUND

Viewing the forecast of evidence presented by the parties in the light most favorable to the Plaintiff, the following is a recitation of the relevant facts.

Plaintiff submitted five Inmate Request Forms between May 13, 2018 and August 9, 2018. [Doc. 42-1 at 2-6]. It appears based on notations made on these requests that those dated June 17, 2018; July 1, 2018; and July 6, 2018 were processed, and the requested trust fund account statements provided to Plaintiff. [See Doc. 42-1 at 3-5]. It is unclear, however, whether a statement was provided in response to Plaintiff's May 13, 2018 request. [See id. at 2].

In the August 9, 2018 request, Plaintiff requested a "6 month [*sic*] trust for tort claim."³ [Doc. 42-1 at 6]. In response, Defendant noted on the bottom of the Request, "Per Mr. Beaver, this has been addressed. (Signed) A. Downey 8/10/2018." Although Plaintiff alleges that the incident at issue occurred on August 5, 2018, Plaintiff does not include a request bearing that date in his materials.⁴ Nonetheless, Plaintiff's forecast of evidence also

---

³ The Plaintiff does not specify in this request when the alleged tort occurred, nor does he allege the details or substance of this action in his Amended Complaint. In his original Complaint, however, he alleged that the tort action he sought to file in the Industrial Commission related to the alleged negligence of a correctional officer in opening the "seg door by mistake" on July 14, 2018, thereby allegedly causing injury to Plaintiff. [Doc. 1 at 5; see Doc. 1-1 at 3].

⁴ Plaintiff did, however, include a copy of the August 5, 2018 request with his unverified Amended Complaint. [See Doc. 4 at 13]. Defendant processed the request and noted, "[a]fter reviewing past requests, this has been sent to you every month. Trust Fund needs to see court documents for this request. (Signed) A. Downey 8/5/18." [Id.]. Although the Court arguably cannot consider this document in deciding the instant motion, see Williams v. Griffin, 952 F.2d 820 (4th Cir. 1991) ("[A] *verified* complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained

7

Case 5:18-cv-00130-MR   Document 43   Filed 12/28/20   Page 7 of 17

shows that Defendant admitted that Plaintiff "requested a six-month trust account statement on August 5, 2018 for purposes of filing a tort claim with the [Industrial Commission]" but that Plaintiff "didn't provide [Defendant] with the documents needed for [Defendant] to process his request." [Doc. 42-1 at 13].

Between August 14, 2015 and January 22, 2020, Plaintiff filed fifty-four (54) civil actions with the North Carolina Industrial Commission ("Industrial Commission") under the State Tort Claims Act. [Doc. 40-5 at 1]. At least thirty-four (34) of those actions involved Plaintiff's complaints regarding his medical conditions and the alleged lack of treatment. [Id. at 1-2]. On July 10, 2018, Plaintiff filed an Affidavit with the Industrial Commission complaining of having been prescribed a medication that caused him adverse side effects at Alexander on June 27, 2018.[5] The day before, however, Plaintiff had signed a refusal for this same medication at his previous place of incarceration, Maury Correctional Institution. [Doc. 40-6]. On August 10, 2018, Plaintiff filed another Affidavit with the Industrial Commission, this time complaining that "Gamewell fail[ed] to treat [his] bad

---

therein are based on personal knowledge."), the result is the same with or without this document.

[5] An affidavit is the document that initiates a claim in the Industrial Commission. [Doc. 40-4 at n. 1: Declaration of Counsel].

back" on August 3, 2018. [Doc. 40-7]. Both Affidavits were accepted by the Industrial Commission. [Doc. 40-4 at ¶¶ 4-5; see Docs. 40-6, 40-7].

On January 22, 2020, the Industrial Commission entered a Gatekeeping Order in a case Plaintiff filed there on September 30, 2019 under the Tort Claims Act. [Doc. 40-5]. In this Order, the Commission noted Plaintiff's established "pattern of flooding the courts to which he directs his attention with a deluge of similar or identical claims," which "wastes limited judicial resources." [Id. at 7]. The Commission also found that "Plaintiff [had] not proceeded on a good faith basis, and that Plaintiff's repeated filings are intended to harass either the Defendant or the Industrial Commission itself." [Id.]. As such, the Commission concluded that "no other sanction short of a pre-filing injunction would suffice to protect the judicial process." [Id.]. The Commission, therefore, ordered as of January 22, 2020, that Plaintiff "shall not file any new Affidavits with the Industrial Commission without first having an attorney licensed to practice law and in good standing in North Carolina review the document and this gatekeeping order, and certify that the filing is not frivolous and that the document complies with Rule 11 of the North Carolina Rules of Civil Procedure." [Id. at 9].

Kimberly Grande, the Executive Director of the Inmate Grievance Resolution Board, avers that she reviewed grievance records for all step

9

three Grievance Appeals submitted by Plaintiff between July 1, 2018, and October 31, 2018. [Doc. 40-1 at ¶ 9]. During that period, Plaintiff filed two grievances that were exhausted through step three. Grievance No. 4870-2018-MPODH-8093 was received on July 2, 2018 and Grievance No. 4860-2018-LPODA-008857 was received on September 13, 2018. [Id. at ¶ 10]. Neither of those grievances relates to the matter at issue in Plaintiff's claim here. [See Docs. 40-2, 40-3].

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies

Defendant argues that Plaintiff failed to exhaust his administrative remedies on his claim prior to filing this action on August 15, 2018 and, therefore, that his Amended Complaint should be dismissed pursuant to the Prison Litigation Reform Act ("PLRA"). [Doc. 39 at 7-9 (citing 42 U.S.C. § 1997e(a))].

The PLRA states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(a). In Jones v. Bock, 549 U.S. 199 (2007), the Supreme Court stated that "[t]here is no question that exhaustion is mandatory under the PLRA and

that unexhausted claims cannot be brought in court." Id. at 211 (citing Porter, 534 U.S. at 524). The Supreme Court has highlighted that the exhaustion of administrative remedies must occur before a civil action is commenced. Porter v. Nussle, 534 U.S. 516 (2002). For example, a prisoner may not exhaust his administrative remedies during the pendency of a Section 1983 action. See Germain v. Shearin, 653 Fed. Appx. 231, 234 (4th Cir. 2016); French v. Warden, 442 F. App'x 845, 846 (4th Cir. 2011). In Anderson v. XYZ Correctional Health Servs., 407 F.3d 674 (4th Cir. 2005), the Fourth Circuit held that:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

Id. at 683.

The North Carolina Department of Public Safety ("NCDPS") has established a three-step procedure governing submission and review of inmate grievances, which it refers to as the Administrative Remedies Procedures ("ARP"). N.C. Gen. Stat. § 148-11A; Moore v. Bennette, 517 F.3d 717, 721 (4th Cir. 2008). Under the ARP, the inmate must submit a

11

grievance at step one and then may appeal an unfavorable decision from step one at steps two and three. Id. A decision at step three of the ARP exhausts the prisoners' remedies under the PLRA. Id.

As noted, Plaintiff made no allegations in his Amended Complaint about having exhausted his administrative remedies and has filed nothing with the Court, in opposition to Defendant's summary judgment motion or otherwise, that tends to show that he submitted a grievance related to Defendant's failure to provide Plaintiff with a trust fund account statement on Plaintiff's August 5, 2018 (or August 9, 2018) request or that he exhausted any such grievance through step three. To be sure, Plaintiff's response to Defendant's summary judgment motion contains no such record and Plaintiff provides no statement by way of affidavit or under penalty of perjury supporting such exhaustion. As such, Plaintiff has not presented a sufficient forecast of evidence to survive the Defendant's Motion for Summary Judgment on this issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (the plaintiff can survive a motion for summary judgment by providing sufficient evidence so that "a reasonable jury could return a verdict for [the plaintiff].") Accordingly, the Court will grant Defendant's Motion for Summary Judgment on this ground. Because dismissals based on the failure to exhaust administrative remedies are without prejudice, the Court will also

12

address the merits of this case. See Dillard v. Anderson, No. 2:13-CV-31-FDW, 2010 WL 9553022, at *2 n.2 (W.D.N.C. Sept. 6, 2010) (Whitney, C.J.). ("A dismissal for failure to exhaust administrative remedies is without prejudice.").

## B. Sovereign Immunity

A suit against a state official in his official capacity is construed as against the state itself. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). It is well settled that neither a state nor its officials acting in their official capacities are "persons" subject to suit under 42 U.S.C. § 1983. Id.; see Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978). Moreover, the Eleventh Amendment generally bars lawsuits by citizens against non-consenting states brought either in state or federal courts. See Alden v. Maine, 527 U.S. 706, 712-13 (1999); Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996).

Although Congress may abrogate the states' sovereign immunity, it has not chosen to do so for claims under 42 U.S.C. § 1983. See Quern v. Jordan, 440 U.S. 332, 343 (1979). Likewise, North Carolina has not waived its sovereign immunity by consenting to be sued in federal court for claims brought under 42 U.S.C. § 1983. See generally, Mary's House, Inc. v. North Carolina, 976 F.Supp.2d 691, 697 (M.D.N.C. 2013) (claim under 42 U.S.C.

§ 1983 barred by sovereign immunity of North Carolina). As such, Defendant is entitled to summary judgment on the Plaintiff's claim against her in her official capacity and the Court will grant Defendant's Motion for Summary Judgment on that claim.

### C. Denial of Access to the Courts

The Supreme Court stated in Bounds v. Smith, 430 U.S. 817 (1977), that prisoners must have meaningful access to the courts. The "meaningful access" referred to in Bounds does not, however, entitle a plaintiff to total or unlimited access. See Moore v. Gray, No. 5:04-CT-918-FL, 2005 WL 3448047, at *1 (E.D.N.C. Jan. 26, 2005), aff'd, 133 Fed. App'x 913 (4th Cir. 2005) (unpublished) (citation omitted). The right of access to the courts only requires that prisoners have the capability of bringing challenges to sentences or conditions of confinement. See Lewis v. Casey, 518 U.S. 343, 356-57 (1996). Moreover, as a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury. See id. at 349. "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim. See id. A plaintiff's "[f]ailure to show that a 'nonfrivolous legal claim has been frustrated' is fatal to his Bounds claim." Alvarez v. Hill, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (quoting Casey, 518 U.S. at 353).

Here, the forecast of evidence shows that Plaintiff was denied a trust fund account statement on August 5 and August 9, 2020 for Plaintiff's use in filing a civil action with the Industrial Commission.[6] The forecast of evidence also shows that Plaintiff successfully filed a claim with the Industrial Commission on August 10, 2018 in which he asserted inadequate medical care. Plaintiff has forecast no evidence that any denial of Plaintiff's August 2018 requests for the trust fund statement precluded his filing of a tort claim with the Industrial Commission, as Plaintiff alleged in his Amended Complaint. This was long before the Gatekeeping Order was entered against Plaintiff because he was such a prolific filer of claims with the Industrial Commission.

Furthermore, the statute of limitations for bringing an action in the Industrial Commission is three years. N.C.G.S. § 143-299. Plaintiff, therefore, could have filed a tort claim relating to the July 14, 2018 incident any time before the January 22, 2020 Gatekeeper Order was entered. And, even then, Plaintiff could have filed a claim with an attorney's certification of

---

[6] In the Affidavit Plaintiff submitted in opposition to Defendant's summary judgment motion, however, Plaintiff claims that he needed the refused trust fund account statement to file an appeal to the Fourth Circuit Court of Appeals. [Doc. 42-1 at 17]. Plaintiff's brief in opposition to Defendant's motion parrots these assertions. [See Doc. 42]. As such, it appears Plaintiff now purports to allege new, contradictory facts in support of his claim, which he of course cannot do.

15

Case 5:18-cv-00130-MR   Document 43   Filed 12/28/20   Page 15 of 17

non-frivolity. Instead of waiting a few days to obtain a statement or at least exhausting his administrative remedies, Plaintiff almost immediately filed the instant lawsuit. Plaintiff was not functionally or practically deterred in pursuing claims with the Industrial Commission. In short, Plaintiff has failed to forecast evidence of prejudice relative to contemplated or existing litigation. This failure is fatal to a claim under § 1983 based on the denial of access to the courts. See Alvarez, 518 F.3d at 1155. The Court, therefore, will grant Defendant's Motion for Summary Judgment on this ground.

### D. Qualified Immunity

"Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). "To determine whether an officer is entitled to qualified immunity, the court must examine (1) whether the plaintiff has demonstrated that the officer violated a constitutional right and (2) whether that right was clearly established at the time of the alleged violation." E.W. ex rel. T.W. v. Dolgos, 884 F.3d 172, 178 (4th Cir. 2018) (internal quotation marks omitted). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the

law." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (internal quotation marks omitted).

Here, because Plaintiff has not forecasted evidence that Defendant violated a constitutional right, Defendant is entitled to qualified immunity on Plaintiff's individual capacity claim. As such, Defendant's Motion for Summary Judgment based on qualified immunity will be granted.

## IV. CONCLUSION

For the reasons stated herein, the Defendant's Motion for Summary Judgment will be granted.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 38] is **GRANTED** and this action is hereby **DISMISSED with prejudice.**

**IT IS SO ORDERED.**

Signed: December 28, 2020

Martin Reidinger
Chief United States District Judge